UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-111-FDW
(3:15-cr-226-FDW-DSC-1)

| | |
|---|---|
| CYNTHIA TERESA HARLAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

Petitioner and two co-defendants were indicted in a Medicaid fraud conspiracy.[1] The counts pertaining to Petitioner are: Count (1), health care fraud conspiracy (18 U.S.C. § 1349); Counts (2)-(4), false statements relating to health care matters (18 U.S.C. § 1035 and 2); Counts (5)-(7), aggravated identity theft (18 U.S.C. § 1028A(a)(1) and 2); and Count (8), obstruction of health care offense investigation (18 U.S.C. § 1518). (3:15-cr-226 (CR) Doc. No. 3).

Petitioner and her two co-defendants proceeded to a joint jury trial. The Government presented evidence that Petitioner held herself out as a consultant specializing in the operation of mental health companies and Medicaid reimbursement. In reality, Petitioner engaged in a fraud conspiracy that involved obtaining children's names through a recruiter then using those names to bill Medicaid for services that never happened. The evidence included the testimony of a number

---

[1] Additional defendants were charged in related but separate cases. See 3:14-cr-211, 3:14-cr-213, 3:14-cr-214, 3:15-cr-109, 3:15-cr-113, 3:15-cr-114, 3:15-cr-117, 3:15-cr-137 and 3:15-cr-283.

1

of individuals who participated in the conspiracy, data, text messages, and audio clips of Petitioner discussing how to engage in fraudulent billing and its profitability. See, e.g., (CR Doc. No. 159 at 115-28) (testimony regarding confidential informant's recorded conversations with Petitioner); (CR Doc. No. 157 at 97) (testimony of Torrey Moton, who pleaded guilty to conspiracy to commit Medicaid fraud); (CR Doc. No. 157 at 138) (testimony of Sakeenah Davis, who pleaded guilty to Medicaid fraud); (CR Doc. No. 157 at 233) (testimony of Jacqueline Ford, who pleaded guilty to Medicaid fraud); (CR Doc. No. 158 at 188) (testimony of Tanisha Melvin, who pleaded guilty to conspiracy to commit health care fraud); (CR Doc. No. 159 at 6) (testimony of Aliya Boss, who pleaded guilty to conspiracy to commit health care fraud). The evidence included testimony that Petitioner was "in charge" of the complex recordkeeping and determining who was going to get paid, their rates, and when payment should be made. See (CR Doc. No. 157 at 201); see also (CR Doc. No. 159 at 115-28).

During the course of trial, one of the co-defendants pleaded guilty. The jury convicted Petitioner and the remaining co-defendant on all counts. (CR Doc. No. 96).

The Presentence Investigation Report (PSR) scored the base offense level as six. (CR Doc. No. 109 at ¶ 43). Twenty levels were added because the loss was at least $9,500,000 but less than $25,000,000; three levels were added because the offense involved a government health care program and the offense was more than $7,000,000; four levels were added because Petitioner was an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive; and two levels were added for obstruction of justice. (CR Doc. No. 109 at ¶¶ 44-48). This resulted in an offense level of 35. (CR Doc. No. 109 at ¶ 60). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. ¶¶ 67-68). This resulted in an advisory imprisonment range of 168 to 210 months except for Counts (5) through (7) for which

2

the guideline sentence is the minimum term of imprisonment required by statute. (CR Doc. No. 109 at ¶¶ 61, 96).

Counsel filed objections to the PSR contesting a number of issues including the description of some of Petitioner's activities and the facts supporting the guideline enhancements in paragraphs 44 (loss amount), 45 (government health care program losses) and 48 (obstruction of justice). (CR Doc. No. 106 at 1).

At the sentencing hearing, defense counsel did not contest the role enhancement contained in paragraph 47 of the PSR because "[t]he conduct that [Petitioner] engaged in is sufficient to warrant the enhancement…." (CR Doc. No. 161 at 6). Defense counsel requested a variance of 11 years' imprisonment because that sentence would be adequate to deter Petitioner and she had no criminal history. (CR Doc. No. 161 at 46). Petitioner chose to address the Court, took responsibility for her actions, and expressed her remorse. (CR Doc. No. 161 at 48). The Government requested a sentence within the guideline range. (CR Doc. No. 161 at 64).

In a Judgment entered on December 12, 2016, the Court varied downward and sentenced Petitioner to a total of 192 months' imprisonment, consisting of 120 months for Counts (2) through (4) and (8), 48 months' imprisonment for Count (1), concurrent, and 24 months for Counts (5) through (7), concurrent with each other but consecutive to the other counts. (CR Doc. No. 130); see (CR Doc. No. 161 at 72-73).

Petitioner argued on direct appeal that her trial should have been severed from that of her co-defendants and she challenged the $12,000,000 loss amount that the Court attributed to her. The Fourth Circuit Court of Appeals affirmed on December 4, 2017. United States v. Harlan, 714 F. App'x 220 (4th Cir. 2017). The time to file a petition for writ of certiorari expired 90 days later on March 5, 2018.

Petitioner timely filed the instant § 2255 Motion to Vacate on February 26, 2019, arguing that trial and appellate counsel provided ineffective assistance. The Government filed a Response arguing that Petitioner's vague and conclusory claims failed to demonstrate either that counsel provided ineffective assistance or that Petitioner was prejudiced and that no evidentiary hearing is required because the record is sufficient to establish that Petitioner is not entitled to any relief. Petitioner filed a Reply arguing that the Government failed to carry its burden of establishing that Petitioner is entitled to no relief and that an evidentiary hearing should be scheduled to allow Petitioner to prove her claims.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that her "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**(1)** **Ineffective Assistance of Trial Counsel**

4

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Petitioner raises a number of claims of ineffective assistance of trial counsel that will be addressed in turn.[2]

**(A)** **Plea Negotiations**

First, Petitioner contends that counsel was ineffective with regards to plea negotiations. Petitioner admits that she was aware of at least two plea offers, but she claims that counsel delayed until all other Defendants had entered pleas, which deprived her of a favorable proffer and plea offer and forced her to go to trial. Petitioner further alleges that counsel told her prior to trial that the maximum sentence she would likely receive "no matter what [she] did" would be around 15 years in prison. (Doc. No. 1-2 at 3). Petitioner claims that, because of the breakdown with counsel, she feels she "was deprived of a legitimate opportunity to get an 8 year plea agreement would could possibly have been even less with timely cooperation." (Doc. No. 1-2 at 3). She argues that, had counsel performed adequately, she would have been able to make an "informed decision" about whether to continue the plea process or proceed to trial (Doc. No. 1-1 at 8) and, "[h]ad [Petitioner] been reasonably advised [she] would have agreed to plea and would have insisted on cooperating to pursue additional relief." (Doc. No. 1-2 at 3).

The right to the effective assistance of counsel extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been

---

[2] Petitioner's claims have been reorganized and renumbered.

rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

Petitioner's contention that her rejection of a plea offer was due to counsel's deficient performance is conclusively refuted by the record. At the hearing on pretrial motions, the prosecutor and defense counsel stated that there were several discussions about a plea offer. Petitioner would be allowed to plead to Counts (1), (5), and (8) with recommendations that the plea is timely, there would be no sentencing recommendations as to loss amount, health care fraud, or any other enhancement reductions. (CR Doc. No. 162 at 44). The following colloquy then transpired:

> THE COURT: … Ms. Harlan, you heard what Ms. Ferry said and you heard what your attorney, Attorney Jones, said.
>
> Is that your recollection and understanding of the best offer that the Government made available to you?
>
> DEFENDANT HARLAN: Yes.
>
> THE COURT: All right. Did you personally choose not to accept that offer?
>
> DEFENDANT HARLAN: Yes.
>
> THE COURT: All right. And I don't want to know what your attorney's advice was, but did he give you advice and – you made the decision yourself, but did he give you advice and did you thoughtfully consider his advice?
>
> DEFENDANT HARLAN: Yes, I did.

(CR Doc. No. 162 at 45).

7

Petitioner's conclusory and self-serving contentions that she would have pleaded guilty but for counsel's alleged delay is refuted by her own statements in open court to the contrary. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Petitioner's further contention that she would have received an eight-year plea offer and that she would have "insisted" on providing substantial assistance but for counsel's deficient performance is purely speculative. See United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Petitioner has not come forward with any evidence that a plea offer in accordance with her wishes was forthcoming from the prosecution or would have been acceptable to the Court. See generally Frye, 566 U.S. at 147. Petitioner's contention that counsel misadvised her about her sentencing exposure is also refuted by the record. While Petitioner claims that counsel misadvised her that she would receive a sentence of around 15 years in prison whether she pleaded guilty or went to trial, this prediction is only slightly higher than the 16-year sentence she actually received. Petitioner has failed to explain how this relatively small difference indicates either that counsel performed deficiently or that any prejudice resulted. Therefore, Petitioner's claim of ineffective assistance with regards to plea negotiations will be denied.

**(B)** **Trial Preparation**

Petitioner contends that counsel was ineffective during trial preparation. She alleges that counsel was difficult to communicate with, refused to answer her phone calls, screamed at her, called her a "sophisticated criminal," and failed to adequately review or discuss "trial strategy and

8

Case 3:15-cr-00226-FDW-DSC   Document 208   Filed 10/07/20   Page 8 of 16

options" with her. (Doc. No. 1-1 at 7); (Doc. No. 1-2 at 2). Petitioner further alleges that counsel complained about the large amount of discovery in the case, refused to review and discuss all of the discovery with Petitioner, discussed only the portions of the discovery with Petitioner that counsel believed to be pertinent, and hired someone to assist in reviewing the discovery. (Doc. No. 1-2 at 2-3). Petitioner also generally alleges that counsel failed to consult with her and follow her instructions.

To support an ineffective assistance claim based on counsel's failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

As a preliminary matter, "no case establish[es] a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel ...." Kleba v. McGinnis, 796 F.2d 947, 954 (7th Cir. 1986); see also Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) ("[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel."). Nor is any particular review of the evidence with a defendant or type of discussion with a criminal defendant required; the representation must only be reasonable. The record demonstrates that counsel thoroughly investigated the case and ably represented Petitioner at trial in this complex conspiracy case. That the amount and manner of counsel's communication was displeasing to Petitioner does not render

9

counsel's performance deficient. See generally Strickland, 466 U.S. at 689 ("a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (citation omitted). Nor does Petitioner explain how counsel performed deficiently by hiring others to aid counsel with reviewing discovery or otherwise investigating the case. Further, Petitioner has failed to demonstrate prejudice by explaining how additional review of discovery or discussion with counsel would have probably resulted in a different trial outcome. See Dyess, 730 F.3d at 364-65 (rejecting § 2255 petitioner's ineffective assistance claim where he offered nothing more than speculative conclusions in explaining who counsel should have called and what aid their testimony would have provided to his case). Therefore, this claim will be denied.

### (C) Trial Performance

Petitioner contends that the trial court failed to subject the Government's case to meaningful adversarial testing which, he claims, constitutes *per se* ineffective assistance of counsel.

There is a narrow exception to Strickland's prejudice prong where a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial." Bell v. Cone, 535 U.S. 685, 695 (2002). This exception applies when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." United States v. Cronic, 466 U.S. 648, 658 (1984). Cronic applies "when ... the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. at 659-660. One circumstance warranting

10

the presumption is the "complete denial of counsel," where "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Wright v. Van Patten, 552 U.S. 120, 124-25 (2008) (quoting Cronic, 466 U.S. at 659).

As a preliminary matter, the Court disagrees with Petitioner's general assertion that the *per se* ineffective standard applies to this claim of ineffective assistance of counsel. The record reveals that Petitioner was not deprived of counsel at any critical stage and that counsel was present and provided zealous advocacy throughout the proceedings. Accordingly, the Strickland standard will be applied and Petitioner is required to demonstrate that counsel's allegedly deficient performance prejudiced her.

Petitioner's claim of ineffective assistance in this regard is too vague and conclusory to support relief. Petitioner fails to identify any examples of how counsel allegedly failed to oppose the Government's case, and any such claim is belied by the record. Counsel ably advocated Petitioner's case during a lengthy jury trial and vigorously argued at sentencing that Petitioner should be sentenced below the advisory guideline range, which was partially successful. Petitioner fails to identify any evidence or argument whatsoever that counsel could have presented at trial that had a reasonable probability of resulting in a different outcome. Therefore, this claim will be denied.

**(D)  Sentencing**

Petitioner contends that counsel was ineffective at sentencing for failing to adequately challenge the role enhancement as an organizer or leader, rather than a manager, of the offense. She contends that the Government failed to present evidence at trial or at sentencing that would demonstrate that the less serious role enhancement should apply. She claims that there is no direct evidence that Petitioner planned or organized the operation, exercised any control or authority over

11

participants, recruited accomplices, or claimed any larger share of the fruits of the criminal activity. According to Petitioner, counsel should have challenged the U.S. Probation Office's position on role, the Court's assessment that the role enhancement applied, and the Government's failure to satisfy its burden of proof on the matter. Petitioner contends that, but for counsel's errors, her sentence would have been different.

The U.S. Sentencing Guidelines provide that, for a defendant who is a leader or organizer of a criminal activity that involved five or more participants or was otherwise extensive, the offense level is increased by four levels. U.S.S.G. § 3B1.1(a) (2015). If the defendant was a manager or supervisor, but not an organizer or leader and the criminal activity involved five or more participants or was otherwise extensive, the offense level is increased by three levels. U.S.S.G. § 3B1.1(b) (2015). Factors that a court should consider in distinguishing between a leadership or organizational role from one of mere management or supervision include: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, app. note 4 (2015).

The evidence at trial revealed that Petitioner purported to offer consulting services to health care providers but in actuality she was "in charge" of the complex recordkeeping that kept the health care fraud scheme operating, and that she determined who was going to get paid, their rates, and when payment should be made. See (CR Doc. No. 157 at 201); see also (CR Doc. No. 159 at 115-28). Especially telling are Petitioner's recorded discussions with a confidential informant regarding how to engage in fraudulent billing and its profitability. See, e.g., (CR Doc. No. 159 at 115-28). The evidence at trial, taken together, demonstrated that Petitioner's level of organization

12

Case 3:15-cr-00226-FDW-DSC   Document 208   Filed 10/07/20   Page 12 of 16

and control over the scheme and the other participants' actions warranted the four-level enhancement as a leader or organizer of the fraud conspiracy. See, e.g., United States v. Lyon, 751 F. App'x 359 (4th Cir. 2018) (evidence established that defendant ran a bond company that was central to a fraud scheme and, in that capacity, assigned specific roles to employees in relation to the scheme).

Although counsel did challenge some of the PSR's factual assertions, counsel did not contest the applicability of the four-level role enhancement. Counsel was not deficient in this regard because the record is replete with evidence that Petitioner was, in fact, a leader and organizer of the conspiracy. Moreover, Petitioner cannot establish prejudice because, even if counsel had asserted such an objection, there is no reasonable probability that it would have been successful. Counsel achieved a below-guideline sentence for Petitioner despite the serious nature of her offense. Petitioner has failed to explain how counsel could have achieved an even lower sentence by presenting a meritless role objection. Therefore, this claim will be denied.

**(2)** **Ineffective Assistance of Appellate Counsel**

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate

13

counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner contends that appellate counsel was ineffective for failing to adequately communicate with Petitioner and explain her ability to proceed in the U.S. Supreme Court on certiorari review. Petitioner alleges that her communication with appellate counsel consisted of a few letters and that counsel otherwise refused to speak to Petitioner. She further alleges that, had counsel explained and discussed the opportunity to pursue a certiorari petition, Petitioner would have elected to file a petition for certiorari review.

Petitioner's contention that appellate counsel failed to adequately communicate with her is too vague and conclusory to support relief. Counsel is required to consult with a criminal defendant about appealing so that the defendant can decide whether or not to litigate an appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). However, once an appeal is filed, no particular type or amount of communication by counsel is required. See, e.g., Bove v. United States, 2017 WL 3402969, at *11 (W.D.N.C. Aug. 8, 2017) (in denying a claim of ineffective assistance of appellate counsel, noting that appellate counsel is not ineffective for failing to engage in any particular

14

communication with a criminal defendant and is not required to raise every nonfrivolous claim on appeal), *app. dism.*, 707 F. App'x 193 (4th Cir. 2017). The fact that counsel did not communicate as frequently as Petitioner would have preferred and that the communication was in writing does not demonstrate that appellate counsel was deficient in any way. Petitioner has failed to demonstrate prejudice because she does not explain how more or different communication with counsel would have had a reasonable probability of resulting in a successful appeal. See generally Dyess, 730 F.3d at 354.

Further, Petitioner's contention that counsel was ineffective with regards to pursuing certiorari in the U.S. Supreme Court is refuted by the record. The right to counsel extends only to the first appeal of right. See Pennsylvania v. Finley, 481 U.S. 551 (1987). There is no right to counsel for discretionary appeals on direct review of a conviction or to post-conviction proceedings. Finley, 481 U.S. at 551 (post-conviction proceedings); Ross v. Moffitt, 417 U.S. 600 (1974) (discretionary appeal). The Fourth Circuit's Local Rule 46(d) provides that CJA counsel's duties extend through advising an unsuccessful appellant in writing of the right to seek review in the Supreme Court. If the appellant requests in writing that a certiorari petition be filed and, in counsel's judgment, there are grounds for seeking Supreme Court review, counsel "shall file" the certiorari petition. If the appellant requests a certiorari petition but counsel believes such a petition would be frivolous, counsel may file a motion to withdraw.

The record reflects that counsel informed Petitioner of the right to seek certiorari review and provided her the opportunity to request a certiorari petition upon written request in accordance with the Fourth Circuit's local rules. Counsel received no such request and accordingly his duties on appeal were successfully terminated. See (Fourth Cir. Case No. 16-4833, Doc. No. 75) (indicating that more than 30 days elapsed since counsel asked Petitioner to inform him whether

15

she would like a certiorari petition to be filed and Petitioner has not responded). Counsel owed Petitioner no further appellate services, and accordingly, Petitioner's claims of ineffective assistance of appellate counsel will be denied.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: October 7, 2020

Frank D. Whitney
United States District Judge